THE GLENS FALLS PAPER MILL COMPANY, Appellant, *v.* SPENCER TRASK and Others, Respondents.

29  449<br>a164a604

*Composition agreement — right of a creditor to insist on a payment in cash not provided for therein.*

Where an agreement has been entered into by the creditors of a company, and a reorganization committee has been appointed, and there is nothing in the agreement, either in terms or by implication, providing that any claims of creditors are to be paid directly in cash, a creditor cannot create a liability on the part of the reorganization committee by proof of matters extrinsic the agreement, arising purely in negotiations or doubtful and disputed understandings had before the agreement was executed, or to be inferred from a proposed stipulation which was expunged from the agreement before it was executed, where the action is not brought to reform the agreement, but simply to recover a specified sum upon a promise to pay it.

APPEAL by the plaintiff, The Glens Falls Paper Mill Company, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 24th day of January, 1898, upon the report of a referee.

*William G. Wilson*, for the appellant.

*William C. Percy*, for the respondents.

PATTERSON, J. :

This appeal is from a judgment entered upon the decision of a referee dismissing the complaint on the merits. A single question is presented, which is whether the plaintiff established so much of a cause of action set up in the complaint as would entitle it to a money judgment against the defendants. As the complaint was originally framed, the action was to compel an accounting of all funds and property which came into the defendants' hands, as a committee, having in charge the reorganization of the New York Times Publishing Company. The plaintiff prayed that the defendants be required to deliver to it certain bonds, and that out of funds in their hands they be adjudged to pay to the plaintiff a certain specified sum of money. It is now made to appear that, pending the suit, the bonds demanded by the plaintiff were delivered to and received by it; and the appellant, on the argument before us, stated that the action proceeded and is now before the court only as one for a demand of money claimed to be due by the defendants to it, and under an agreement to make payment in money. It was shown that the plaintiff was a creditor of the New York Times Publishing Company on two classes of claims — one represented by certain promissory notes, and the other consisting of an open account for merchandise sold and delivered. The Times Publishing Company being in embarrassment, measures were taken for the settlement and adjustment of all claims against it and for a reorganization of the business. For the accomplishment of these ends a committee, consisting of these defendants, was appointed, called the reorganization committee. There were a great many meetings of creditors, and from time to time various plans were submitted, none of which were acceptable until one was presented which bore date June 9, 1896, and which, after certain modifications, was adopted. That plan provided for an issue of $500,000 of bonds, and also for an issue of stock, which bonds and stock were to be used in the way provided by the agreement in the extinguishment of the indebtedness of the publishing company. There is nothing whatever in this agreement which, either in terms or by implication, provides that any claims of creditors are to be paid directly in cash. The plan was to be approved both by creditors and stockholders. There was a separate creditors' agreement, to which the plaintiff became a party,

binding the signers to the plan and confiding its execution to the committee. At the same time there was a stockholders' agreement, made and signed, by which the stockholders assenting to the plan of reorganization assigned to the trustees their shares of stock to be used in the reorganization scheme. The creditors' agreement contained an approval of the plan of reorganization, and also an agreement to assign their respective claims and demands against the publishing company to the trustees of the reorganization as a committee in trust to collect the claims assigned, or the *pro rata* share that might grow due to each of the parties signing the agreement and to pay over the amount so collected. The plaintiff signed the creditors' agreement about the eleventh of August. A form had been prepared by the committee for the assignment of claims. The plaintiff in the assignment *of its open account* interlined these words, " Provided the said claim be paid in full in cash." That assignment was handed to some one in the State Trust Company, which was the agent of the committee, but when the committee discovered that these words had been inserted they immediately returned the assignment to the plaintiff.

The conspicuous circumstance in the case is that there is nothing whatever in any of the papers constituting the contracts upon which the parties acted in this reorganization that bound the committee in any way to the payment of the plaintiff's open account in cash. The right of the plaintiff to look to the committee for the payment of that account in that way must be based upon some contract express or implied. The referee found that no agreement of the kind was made or was to be inferred, and the only proof offered by the plaintiff to substantiate its claim is of an understanding only, long antedating the signing of the agreement, on the part of certain gentlemen acting for it in the negotiations which led up to the adoption of the plan of reorganization by the stockholders and by the creditors. That there were conversations had respecting cash payments in connection with some plans of reorganization is undoubtedly true, for the witnesses who testify in that behalf are reputable gentlemen and entirely unimpeached; but it is quite evident that all the conversations or preliminary discussions with reference to that subject either related to suggested plans which were not adopted, but which all fell through and were superseded

by that ultimately agreed upon and signed by the plaintiff, or related to a feature expunged from the plan as it was formally adopted. Mr. Wallace's and Mr. Dillon's testimony relate to matters not embraced in the final agreement as executed. It was not proved that the agreement as executed did not contain all the terms as finally fixed upon. That agreement establishes the rights of the parties. We cannot read into it any other or additional term, or reform it or bind the committee to something which they did not promise, or impose upon them a liability which they did not assume, or make a new contract for the parties only upon the testimony of the gentlemen referred to that they understood or intended that the plaintiff should come into the scheme on the basis of a cash payment of its open account. We must construe the agreement as it is and ascertain the liability of the committee from the terms of that agreement. Even if we resort to the surrounding circumstances and with their aid give construction to the agreement, it would appear that we could not reach any other conclusion. The assertion is made that in the typewritten draft of the agreement, as ultimately adopted, a reference was made to cash payment by quick assets in connection with the proceeds of $225,000 of the bond issue; but the difficulty is that in the plan, as adopted and signed by the plaintiff, the matter relating to quick assets was stricken out of the agreement. This action is not to reform the agreement; it is not to open the transaction and reinstate the plaintiff, which has bound itself to the agreement by accepting the bonds for its promissory notes; and the action being maintained merely as one at common law to recover a specific sum upon a promise to pay, the right of the plaintiff must depend altogether upon the establishment of an agreement. It signed the creditors' agreement to carry out the plan of reorganization. That plan does not in any way devolve a liability upon the defendants, such as is sought to be enforced here, in the mutilated form in which the case is before us. A liability is not to be spelled out from matters extrinsic of the agreement, arising purely in negotiations or doubtful and disputed understandings had before the agreement was executed, or to be inferred from a proposed stipulation which was expunged from the agreement before it was executed, and which, therefore, the committee did not undertake to be bound by.

The referee was right in his finding that there was no agreement to pay the open account in cash, and the judgment appealed from should be affirmed, with costs.

RUMSEY, O'BRIEN and INGRAHAM, JJ., concurred.

Judgment affirmed, with costs.